Number 141787, Brawner Builders v. Northern Assurance Company of America. Mr. Brennan. Yes, ma'am. Good morning, Your Honors. May it please the Court, Stephen Brennan, representing Brawner Insurance Company, the plaintiff in this matter. I'll take guidance from one of Judge Motz's prior comments. I know all of you had insurance coverage disputes before, so I'll try to get right to the heart of the case and not talk about general insurance law. But in a nutshell, this is a policy issued by Northern. It provides certain types of coverage for matters that occur on insured vessels that are owned by Brawner. Mr. Calandrus's injury occurred on an insured vessel. If we go to the policy, which is found in the record extract and cited and quoted in the briefs, the significant parts of the policy to us, I believe, are first that the schedule of insurance provides coverage for a maximum crew of six total persons, average two per vessel. That's an appendix at pages 154 and 289. And then in the P&I protection and indemnity section, of which that's a part, it says that Northern will provide coverage for the matter set forth in the P&I. Is the contract ambiguous? I'm sorry, Your Honor? Is the insurance contract ambiguous? It is ambiguous, Your Honor, and I think that the only reading of Judge Blake's opinion was that she found it was ambiguous. She said Brawner made several arguments that didn't dissuade her from finding that a reasonable person could or can interpret the policy in the manner that Northern did. And as we said in our reply brief in the Clendenin case that the Court of Appeals of Maryland has said, if it could be interpreted in a particular way. So if it's ambiguous, I, you know, Maryland law, I always have to kind of think about this because I think it differs a little from some of the other states in terms of the effect of an ambiguity in a contract. What happens if it's ambiguous? How do we then look at then? May we use, may the Court then look at extrinsic evidence? That's a two-part answer, Your Honor. Extrinsic evidence is, can be used in some circumstances to clarify an ambiguity. But as we pointed out in our brief, an insurer, this is a two-pronged case. Duty to defend and duty to indemnify, which as we pointed out are two different things. You can have a duty to defend, and it says policy has duty to defend language and not have a duty to indemnify. Under Maryland law, as we pointed out in our brief, an insurer cannot use extrinsic evidence when it comes to the duty to defend. It can use extrinsic evidence with regard to the duty to indemnify. So this is a duty to indemnify and a duty to defend case, two counts of the complaint. So while it may be appropriate to consider extrinsic evidence with regard to a duty to indemnify, it is not appropriate to consider it with an ambiguity on a duty to defend. One of the seminal cases in Maryland on duty to defend is the St. Paul v. Pryalski case, which is an old case. And in that case, the court said with regard to a duty to defend, if there's an ambiguity, it has to be, only with regard to a duty to defend, if there's an ambiguity, it has to be construed in favor of the insured. So they analyzed the duty to defend separately from the duty to indemnify? Oh, yeah. Well, I mean, I think Fourth Circuit law is clear that the duty to defend is separate from the duty to indemnify. I'm thinking of Maryland law. Well, Maryland law is equally clear. Your duty to defend is broader than the duty to indemnify. You have a duty to defend if the allegation is true. Under every law, the duty to defend is broader than the duty to indemnify. That's no quirk of Maryland law. Well, true. In the Fourth Circuit cases I've relied on in my brief, we're applying Maryland law to that concept. So it is a two-part analysis with regard to extrinsic evidence. With regard to indemnification, I don't deny that a court can consider extrinsic evidence with regard to that. But this was an ambiguous contract, and it should have been construed on the duty to defend, liberally in favor of the insured and in favor of coverage. But is the answer at both the crux being a question of coverage? I mean, whether it's to indemnify or whether it's to defend, is it a question of coverage? Well, the allegations that give rise to the claim and the provisions of the policy, looking at the eight corners, as it were, have to give rise to a potentiality of coverage. And then the insured, with regard to a duty to indemnify, or maybe even a duty to defend, not the insurer, can rely on extrinsic evidence. I'm trying to understand it, because this is interesting. You've got these named people in the policy. My question is, if the evidence, if it is clear, or at least the extensive evidence to show, that the policy does not provide for liability for injuries for anyone who's not named in it, then that seems to me takes care of both duty to defend and indemnify. Well, if that's what the extrinsic evidence shows. I mean, if you don't know where it's like, you know, the contract doesn't even cover this person. You don't have to defend for somebody who's not even covered. If the extrinsic evidence shows that only those named in it are covered, and this person is seeking recovery from someone who's not named, then that would seem to me that neither duty to defend nor indemnify would be available, if that's what it shows. Well, first of all, I think that's assuming that an insured can use extrinsic evidence on a duty to defend. Let's just, for purposes of the answer to the question, assume that. Well, then I don't believe the extrinsic evidence is clear, because, for example, Brawner, the judge found that the undisputed evidence showed that both parties knew that Northern had to review and approve potential employees before they would be covered, and Brawner had its answers to interrogatories in response to requests for admissions that denied those facts, as I pointed out in our brief, and that's not an insurance policy issue. That's a factual issue. It's a summary judgment issue. If the answers to interrogatories and the responses to discovery requests show that there's a dispute, then that's not a matter of insurance policy coverage. Let me try to get to this a different way. What in the contract of insurance do you think gives you coverage here? What provision? Maybe you can direct me to that. The broad provision in the personal indemnity policy around it is found at Pages 140 and 275 of the extract, which is Items 1 and 2. They provide coverage for bodily injury or illness, and Item 2 in particular, hospital, medical, and other expenses incurred with respect to loss and bodily injury or illness of any person. As we pointed out and as Judge Blake indicated in footnote 7 or 6 of her opinion, and throughout her opinion, that broad policy coverage, and it's not dependent on whether a person is crew or not. So now you're going to move to the endorsement. Well, I am momentarily, but by contrast, Items 3 and 4 of the P&I section, which are found on the same pages, are limited to crew-dependent things, crew member burial expense and crew member repatriation expenses, respectively. So my point is we have Items 1 and 2 that provide coverage for bodily injury to any person. It's not dependent on whether you're a crew. And then in the same provision or section, you have Items 3 and 4, which are crew-dependent. So then we get to the condition, which is a multiple-prong condition. I think we're only interested with the crew condition, except to point out that it doesn't include the same language as the others, that if you violate it, you're automatically not going to get coverage. Okay. What page is that again? Now the crew condition is at two places, pages 143-144 and 278-279, the policies in the extract at two places. 143? 143-144 and 278-279. Well, that's the whole condition. Okay. So how do you get out from under that? The crew condition is number three. Now, as we pointed out under the Greenlee case from the First Circuit and the policy in the course of conduct of the parties, the material aspect of that was that there not be more than two crew on board at any time, and that didn't occur here. And then that second paragraph says, in the event additional crew is to be employed, not to exceed six, and there are only five here, you provide prior notice, but the policy doesn't contain any right to review credentials and to reject people. And I'd say, you know, first of all, it was our position that where it says the named crew covered under this policy, because that relates to items three and four in the personal indemnity provision, because those are crew dependent, you know, the burial expenses and the repatriation expenses. And it's silent, this provision is silent, with regard to what occurs if you have less than two crew on board and you have less than the six maximum, which is what occurred here. So I'm sorry. Are you saying that if the injured employee here had been one of three on the ship at the time, you would have no claim? I believe that there were three, more than two on the ship, if there were three, then the policy might be. Oh, you would say there was a prorotical. Yeah, it might be two-thirds, and that's really the gist. And that none of the three would have to be named? No, I think that's correct for if they are. So you think the naming of the crew in this special condition is just what? What does it mean? You think it only goes to burial expenses. The crew dependent coverage, right, the burial expenses and the repatriation expenses. So let me just ask you this question. So what you want us to do is to reverse and remand, and then Judge Blake would have some sort of, she would find as a matter of law, she would review these facts and she would be the fact finder and she would then enter her judgment. That's what you want, right? Well, I believe that where the extrinsic evidence doesn't clarify the ambiguity, the policy has to be construed in favor of the insured. It's our position here that it does not. I understand that, but assuming that we think that the extrinsic evidence is relevant here. Well, I understand. The results you would get is that we send it back to Judge Blake and we say, no, you can't grant summary judgment because there is this, because you could interpret this policy so that the burial expenses and the repatriation, only they are dealing, are referencing this policy provision dealing with crew, and that otherwise there's coverage for all persons, right? And she now has to determine what is the best reading of the policy as the finder of fact. That's what you would get, right? No, I don't think that is what you would get because if the extrinsic evidence, which Northern has had an opportunity to present, it's not claiming it didn't get to present what it wanted, does not clarify the ambiguity as a matter of law, then the policy has to be construed for the duty to defend in favor of the insured. And there's an ambiguity in it, so we would win on the duty to defend as a matter of law. My other argument aside from that with regard to this condition is that, as you can see from the language in it, it's a notice provision. It says we have to provide notice, and it's a condition. Now, one of the cases that we – So where does that go? If I can. One of the cases that both parties have cited is Prince George's County versus local government insurance trust, 388 Maryland 162-879-8281. And in that case, as a common law matter, because the Maryland Insurance Act didn't apply to the defendant because it wasn't an insurer, the court adopted the Restatement of Contracts position, Section 229. This is at page 186 in the Maryland Reporter and 96 in the Atlantic Reporter, which is excuse of condition to avoid forfeiture. And the point being that if the premiums have been paid, if the material aspects of the condition, which is not having more than two on board and not having more than six total, have been met, then under Maryland insurance law, the contract is construed, this provision, to avoid forfeiture whenever possible. Because this is kind of a gotcha thing. And they're not saying we were prejudiced because you didn't provide notice. We didn't get an opportunity to investigate. As I said, they did investigate. They concluded their investigation. It was during the policy period. They're not saying any exclusions apply. They're just saying, well, if you had provided notice slightly earlier, we would have coverage, but since you didn't, we don't. Let me give you an opportunity to help me out at least in an understanding, because this is where I am on this, and I'm trying to get there. We talked about extrinsic evidence. We started out first, and you alluded to the fact that maybe not in due to defend, but we're talking about a prong one due to defend type situation under Maryland law. So there, extrinsic evidence can be used for the language of the policy itself. Extrinsic evidence here that seems to me to be quite important is the evidence that every time there was a crew change, you immediately informed Northern of the change to ensure there was cover for the continuation of those crews. And if you're seeking extrinsic evidence to understand what is the understanding with the policy, that would have to – that seems pretty compelling to me, that you understood that this policy only covered folks who were in that policy. But Bronner said in its discovery responses that the reason it provided that information was because it was its understanding that it was material, depending on the number of employees they had, if it exceeded a certain number, to the premium. Because there were under six here, it didn't adjust the premium, and it expressed its understanding that that was why it provided the information. Now, the broker, of course – and then, as we pointed out, Northern would get the information and they would just list it. There was no substantive interaction. They have no right under the policy to review and reject the qualifications anyway. But there was no substantive interaction about the people. They would simply list them, which is my point under the Prince George's County case, is that this is really affecting a forfeiture because of a technical noncompliance with a condition where it would cause no prejudice. Had it been met a few days earlier, then there would be coverage, and under Maryland law, the insurance contract should be construed to avoid that unjust result. Obviously, I think I'm into my rebuttal time. Thank you very much. Good morning, Your Honors. May it please the Court. Robert Ferguson for Northern Insurance Company of America. I'll be brief. This policy was in effect at the time Mr. Calandrus had his injury. A unique thing about this type of policy is that an injured worker may make a Jones Act claim for negligence, and it is a claim that is unique to a seaman. This policy covered Brawner for the event of any seaman making a Jones Act claim. But this policy restricted its application to employees of Brawner who might qualify to make a seaman's claim under the Jones Act by defining who is or is not a crew member. And in the special conditions endorsement, the company specified that it is a condition of this policy that the named crew members covered under this policy, not just part of it, but the whole policy, is and it names six individuals by their names, and Mr. Calandrus is not one of them. It is undisputed that Mr. Calandrus was serving as a crew person operating one of Brawner's vessels when he was injured. Brawner's does not contest that on the day of this injury, Mr. Calandrus had the very same position and duties as those Brawner employees that are expressly listed in this endorsement. Mr. Calandrus is not listed in the endorsement and therefore is not entitled to coverage under the policy. Brawner is not entitled to coverage under the policy for any claims arising out of an injury to Mr. Calandrus. Further, Brawner admits in its response to requests for admission number seven that was served by Northern that Calandrus was not listed as a crew member on the policy on the date of his injury. They do make note that at some time later he was added, and that is certainly consistent with the course of dealing that the parties had prior to this injury. It's just for some reason that has yet to be explained, Mr. Calandrus worked for the company as a crewman on a vessel for a number of weeks before his injury, and they did not add him to the policy. From the undisputed facts, one can reach only one conclusion, as did Judge Blake in this case. Calandrus is not a covered crew member, and Brawner is not entitled to coverage for any claims arising out of his injury. Now, Brawner is critical of Judge Blake's opinion in a couple of ways. First, Brawner is critical of Judge Blake's use of the word could instead of would. Quite clearly, Judge Blake sets forth the applicable standards for interpreting the policy, including what meaning should be attributed to the policy by a reasonably prudent layperson when looking at the terms. She applied those standards. And interpreting the policy, she set forth in her opinion a separate section on interpreting the policy. Going through the policy language, she concluded at page eight of her opinion that the policy provides coverage only for those injuries suffered by those crew members expressly listed in the crew endorsement. What about the any person provision? Well, the any person provision is part of the general coverage that is offered by this policy, because other people who are not crew members might be injured and they would be covered as any person, assuming there was an occurrence. But this special endorsement or special conditions endorsement is a limitation on the application of the any person coverage when it is applied to crew members. And the law in Maryland is that conditions that apply or that describe the coverage and may limit it from the general coverage afforded by the policy are to be controlling over the general language of the policy. And there's no contributory negligence defense under the Jones Act? Actually, there is. Well, comparative fault. Comparative fault, yeah. Comparative fault. Because in Maryland, you'd have available a contributory negligence defense. Yes, we see that. In other words, my point is simply that there are differences in the law that make sense of this policy distinction between any person and crew. Yes, it is. A crew is more likely than not to have a maritime claim under which maritime law would apply with comparative fault and no assumption of risk for a seaman. Right. So your point, of course, is well taken. Brawner is also critical of Northern for not addressing two of the cases that Brawner cites in its brief that find that the use of the term crew is ambiguous. And, in fact, we did not address those because we think that they are not the least bit instructive for the court deciding this case. In those two cases, the policies did use the term crew, but it was undefined, really undefined. As a counterpoint to what our position is in this case, our endorsement not only uses the term crew but specifically defines them as six particular persons. You don't have to define what you name. Exactly. So, finally, Brawner is also critical of Judge Blake's opinion because she conducts an analysis of the extrinsic evidence. And I think clearly in part one of her policy, of her opinion, where she discusses interpreting the policy, she concludes that there is no ambiguity. She does not say, I conclude. I don't make it so clear, but I take your point. She doesn't use those words, but she ends up at that point because she rejects every alternative interpretation proffered by Brawner. And to sort of drive home the point that Brawner has all these different interpretations they're throwing at her, she gratuitously goes to the second section of her opinion where she discusses the extrinsic evidence, mainly to point out that Brawner, in its dealings with Northern over the past four years prior to Mr. Calander's injury, dealt with Northern just as Northern is proposing that this endorsement be interpreted. And, in fact, during those four years there were ten different times at least when Brawner contacted Northern, or actually the broker International Marine Underwriters, to add or delete a crewman from the policy. So she simply points out that their course of dealing is consistent with her interpretation of the unambiguous language in the insurance policy. Mr. Ferguson, can you turn to the endorsement section? It's at J143, maybe you have it in front of you. And I'm still stuck, and so I would appreciate your help. It's 143 at the JA. At least that's one part of it, one time it's there. Yeah, there's a series of these endorsements. Yes. They're very similar. The one we're concerned with is at JA 143, right? I'm getting there. Okay. There. Okay. And if you look at the, this is my problem, and I put it to you before and you didn't have much interest or use for it. I'm interested. But the any person provision, it seems to me, says any person. And you say, oh, but this endorsement provision modifies that. And if you look at the first one, navigation, right? Yes. It says if there is a fare to comply with this condition, there's no coverage. Good enough. And the second one, passengers, last line again, is if there is a fare to comply with the condition, there is no coverage. With the third one, crew, there isn't that language. No, there is not that language. And so we're just talking about it is a condition of this policy. And so I'm not saying that this is the best reading of the policy. But couldn't their argument that these provisions about crew only apply to the burial expense and repatriation, which again reference back to crew and don't do anything with respect to the any person provision? Well, if they actually said that. Well, they don't say otherwise. They talk only about crew. The earlier provisions that talk about crew, they would be modifying, to be sure. But it doesn't say if there is a fare to comply with this condition, there's no coverage under the policy. No, it doesn't say that because this specifies which crew members, who are, it identifies the crew members that are covered by this policy. And it is consistent with the procedure that they periodically identify, either remove them or add them. I understand your argument. I'm not even saying it's not the best argument. I'm just asking you if it is possible that the other argument. It is possible that someone could arrive at that argument. And if that is so, then was summary judgment appropriate? It is possible. I'll get to that. Okay. It is possible that someone could make that argument. And it has been made in this case. But it is not a logical argument, with all due respect, because under Maryland law, a condition on a policy may limit coverage. To be sure. And they say it does. It limits coverage with respect to the burial expenses and the repatriation expenses. And I think that the absence of language saying this paragraph three refers only to that part of the coverage that gives death benefits or repatriation benefits to crew members is not here. No. But neither is the, if there is a failure to comply with this condition, there's no coverage or there's not coverage. That's not there either. I agree. It's not there either. But I think it is most logical to read this as a limitation. And I agree with you. It is most logical. And I agree with you. But if you're here on summary judgment. I don't, I agree with you. It's an argument that can be made, but it's not a logical argument under the terms of this policy. That's my point. And the court can still grant summary judgment. I see, I see the doubt in your face. But I'm not, I can't. It's really a question. Well, let me ask you the same question I asked your colleague. If we should conclude that this policy does have this dispute, there is this dispute, it's a material fact, we would reverse and we would remain. I don't think a jury trial was pled. Maybe you're not entitled to one even. We'd go back to Judge Blake, right? Correct. She would make findings of fact. Correct. Conclusions of law. Correct. But I think, and I have this very issue in another case that's coming in your direction. Because the policy doesn't say if these terms aren't met, you have no coverage. Well, the reason that that has a little bit of swing is it does say it with the two prior conditions. That's true. And we have a coverage for any person. That's true. But coverage for any person is under the general provisions of the policy. Right, and you have an exception. This narrows the application. And just because the policy does not say if this condition isn't met, you're not going to have any coverage. It's sort of like, what's the point of writing it this way? It is a condition of this policy that these six people are the only crew members covered. Well, their purpose, they say the purpose is to deal with the burial expenses and the repatriation. Well, that I think defies logic because. Well, let me ask you this. When I posed this to your friend on the other side, he said, oh, no, no, no. We would be entitled to judgment as a matter of law. Maybe you can address that. Remember if I said if we should find that there's a dispute as to fact here. Correct. And you remand. If you find there's a dispute of fact and remand, then the trier of fact is going to have to decide that. Right. But he said that under Maryland law, not citing a case, I thought he said under Maryland law, he would be entitled to judgment if there's a dispute of fact. I did hear him say that. But if there's a dispute of fact, I don't know how you get judgment as a matter of law. Well, he said that it's tied up in the business about the policy is unclear, then it goes to the insured. Oh, it may be construed against the insurer. The trier of fact may construe it against the insurer. That doesn't mean – You know the general principle that it's construed against the maker. Yes. Presumably your client made – I don't think his client wrote this policy, right? My client wrote this policy. Right. So what do we do with that? What influence does that – I'm trying to have you respond to what he said, and this is your last chance in front of us anyway. Boy, I understand that. If it's remanded because you find there's a dispute of fact, then I think the trier of fact has to decide that. And it may construe it but does not have to construe it against the insurer. Because if it's at the fact-finding stage, it can take into account all of the extrinsic facts, not just that one. Indeed. Unless the court has any questions, that's all I have. I ask that the court please affirm Judge Blake's decision and affirm the judgment in favor of Northern Assurance Company. Thank you. Thank you very much. Mr. Brennan, do you have any rebuttal? No. Not too much because I think I went into my time by a couple minutes earlier, and I didn't have a whole four minutes anyway. I guess what I meant by my prior response is that ordinarily, yes, obviously if there are disputes of fact, we wouldn't be entitled to judgment as a matter of law. But you are correct that I was talking about the duty to defend specifically. And what I tried to say, perhaps inarticulately, was that Brawner had had its opportunity to submit all the extrinsic evidence about the meaning of the contract that it wished to submit. And Maryland law is that if that extrinsic evidence was not sufficient to clarify the contract as a matter of law, then on a duty to defend the contract would be construed in favor of the insured. And that is Maryland law, where the extrinsic evidence does not clarify the ambiguity on the duty to defend as a matter of law. A finder of fact could find that the extrinsic evidence does. We disagreed with that. I know you disagreed with it. That's why we appealed. But, you know, obviously. Now, the other issue, Your Honor correctly pointed out that the conditions 1 and 2 do have the language that is absent from condition 3 within the general conditions about no coverage applying. And as we pointed out in our brief, there are a number of other places in the policy where that language also applies, but it wasn't used here. And I think that brings us to the Vollmer, V-O-L-L-M-E-R decision cited in our brief, where because of the absence of that language, the silence, as it were, in the particular provision or condition at issue, generally the rule applicable would be to resolve the ambiguity caused by that silence against the drafter of the policy and in favor of coverage. Now, whether that's a factual issue for Judge Blake as a trier of fact is another topic. Well, whether it's ambiguous is a question of law, correct? Well, it is. Of course. We cited the Fourth Circuit case on that, whether it's ambiguous. State conditions 1, 2, and 3, 1 and 2 have the language, 3 does not, but is worded quite differently from 1 and 2 apart from the sentence that's missing from 3, and whether those three provisions taken together on account of the absence of the final sentence appearing in 1 and 2 from 3 is a question of law. Well, I mean, determining whether there's an ambiguity is a question of law. Now, Maryland law holds that you look at the policy as a whole, including the antiperson provision. You don't just look at those three conditions. You have to look at the policy as a whole. No, but Judge Davis was looking at them as a modification of the antiperson. I mean, we don't have to – we're all grownups here. I would point out that notwithstanding Brawner's or Northern's interpretation of her opinion, Judge Blake did not construe the contract as a matter of law. She absolutely did. She did not say the contract is unambiguous, and as a matter of law, Brawner wins. She said, I have to consider extrinsic evidence to, quote, clarify the ambiguity. I don't read it that way. I think she says, even if you were to regard it as ambiguous, I consider the extrinsic evidence. The extract, page 316, says, I'm considering the extrinsic evidence, quote, to clarify the ambiguity. And it also said in the prior page what Your Honor said. So it said both things. So her opinion is ambiguous. It is. It's true. Ironically true. Ambiguity. Abound. Abounds in the land. All right. We'll come down and greet the lawyers and then go directly to our last case.
judges: Diana Gribbon Motz, James A. Wynn, Jr., Andre M. Davis